J-S21019-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                           :              PENNSYLVANIA
                                           :

                  v.                        :
                                           :

EUGENE M. PRATT                 :
                                         :

             Appellant          :       No. 1246 WDA 2017

Appeal from the Judgment of Sentence March 23, 2016
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0001261-2014

BEFORE:  OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:              FILED APRIL 30, 2018

Eugene M. Pratt (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of simple assault, terroristic threats, and harassment.[1]  We affirm.

The pertinent facts of this case are as follows:

In the early evening hours on July 11, 2014, Ashley Weakland and Tyler Rockwell were at her friend Debbie's house located on Hortense Street in Uniontown, Fayette County, Pennsylvania. Weakland and Rockwell were in the bathroom on the first floor getting ready to leave when Debbie alerted Weakland that somebody was there to see her.  Weakland walked out of the bathroom, saw [Appellant], and stepped back into the bathroom. [Appellant] followed Weakland and pushed his way into the bathroom.

Once he made his way into the bathroom, [Appellant], believing Weakland had his phone, demanded that Weakland give him the phone.  While Weakland had a phone on the sink in the bathroom, she claimed it was her phone.  When Weakland was

_____

[1]  18 Pa.C.S.A. §§ 2701(a)(3), 2706(a)(1), 2709(a)(1).

not complying, the demands became louder. Eventually, [Appellant] pulled out a knife from his pocket and threatened Weakland to give him his phone or he would slice her and kill her. Weakland ignored [Appellant] at first, but then felt a coldness on her neck. She glanced down and saw a knife at the side of her neck. Weakland testified [that] she was startled, frightened and terrified that [Appellant] was going to hurt or kill her.

At about the same time, the phone rang. As Weakland went to grab the phone, [Appellant] also reached for the phone. [Appellant] attempted to reach around Weakland and in the process, cut her with the knife, resulting in small cuts on her hands. The phone fell out of Weakland's hand onto the floor and the battery fell out.

Once the phone fell on the ground, Rockwell intervened. He suggested to [Appellant] that they look at the contacts in the phone to determine the owner of the phone. Rockwell testified that [Appellant] responded by holding the knife up to Rockwell's throat and said, "shut up boy I'll slice you too."

[Appellant] eventually grabbed the phone from Weakland, exited the house and drove off in a vehicle. Weakland ran after him out onto the front porch. After [Appellant] left, Weakland, using Debbie's phone, called Officer Holland and 9-1-1 to report the incident. Weakland and Rockwell then met the police at Esther's Tavern in Uniontown, as Debbie did not want the police at her house. They encountered Corporal Delbert James DeWitt with the Uniontown City Police.

As Weakland was talking to Corporal DeWitt, Weakland observed [Appellant] outside of Esther's Tavern. After talking with Weakland and Rockwell, Corporal DeWitt arrested [Appellant]. He conducted a search incident to arrest and found a cell phone and two knives on [Appellant]'s person.

[Appellant] was transported to the police station. Weakland and Rockwell also went to the station to give written statements. At the station, the two knives found on the Appellant's person were placed in an evidence box and sealed for trial. The cell phone was photographed and given to Weakland after Corporal DeWitt determined the phone belonged to Weakland.

[Appellant] testified at trial. He stated that at some point prior to July 11, 2014, Weakland took his vehicle and rented it out to a woman named Sarah Farrell. [Appellant] testified that while he did get his vehicle back, certain items inside the vehicle were missing, including his cell phone. [Appellant] ultimately found Weakland, who was staying at his cousin Debbie's house.

[Appellant] testified that on July 11, 2014, he went to Debbie's house. [Appellant], informed by Debbie that Weakland was in the bathroom, made his way into the house and pushed the bathroom door open. [Appellant] asked Weakland to give him his cell phone and when she showed him the phone, [Appellant] grabbed for it. [Appellant] stated the phone fell, he picked it up, and left the residence. [Appellant] testified that while he does carry knives, he never pulled one out and never threatened to kill Weakland.

Trial Court Opinion, 9/27/17, at 3-6 (footnotes and record citations omitted).

The trial court provided the following summary of the procedural history

of this case:

Following a trial by jury, [Appellant] was found guilty of [t]erroristic [t]hreats, [s]imple [a]ssault, and [h]arassment.[2] On March 23, 2016, [Appellant] was sentenced to an aggregate term of imprisonment of not less than thirty-three (33) months nor more than ninety (90) months. [Appellant] filed a direct appeal to the Superior Court of Pennsylvania at 511 WDA 2016. This [c]ourt issued an opinion in support of the verdict of the jury. The Superior Court dismissed [Appellant's original] appeal on November 16, 2016 due to the deficiencies in Appellant's brief. Thereafter, [Appellant] filed a PCRA [p]etition[,] which the [c]ourt granted on August 28, 2017[,] and reinstated the Appellant's right to a direct appeal with new counsel. The instant appeal followed.[3]

_____

[2] Appellant was found not guilty of the charges of robbery, theft by unlawful taking, receiving stolen property, and recklessly endangering another person.

[3] Both Appellant and the trial court have complied with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.

Id. at 1-2 (footnote omitted).

On appeal, Appellant presents the following issues for review:

1.   Whether the trial court erred by failing to recuse [] from the present case?

2.   Whether [the] trial court erred by failing to strike and/or failing to issue a cautionary instruction in regards to Ashley Weakland's statement that she "guessed" that the cell phone at issue was found on [Appellant]'s person?

3.   Whether the trial court erred by permitting the Commonwealth during closing argument to identify the knives found on [Appellant]'s person at the time of his apprehension as the knife used in the incident, when no witness identified either knife as being used in the incident?

Appellant's Brief at 3.[4]

First, Appellant argues that the trial court judge erred in failing to recuse himself from this case because the trial judge had previously "presided over a criminal case involving both [Appellant] and his son."  Appellant's Brief at 7.

_____

[4] We note that Appellant filed also filed a pro se brief in this matter.  Although it is not entirely clear from his pro se brief, it appears Appellant filed the pro se brief under the impression that his counsel had withdrawn from the case. See Appellant's Pro Se Brief, 11/13/17.  Although Appellant's counsel did seek permission from this Court to withdraw prior to the filing of the counseled brief, this Court denied counsel's petition, and counsel subsequently filed an advocate brief.  See Order Denying Application to Withdraw as Counsel, 10/31/17.  Nevertheless, because Appellant is represented on appeal, we may not consider his pro se brief, as it constitutes hybrid representation.  See Commonwealth v. Jette, 23 A.3d 1032, 1044 (Pa. 2011) ("[T]he proper response to any pro se pleading is to refer the pleading to counsel, and to take no further action on the pro se pleading unless counsel forwards a motion.").

We review "a jurist's denial of a motion to recuse for abuse of discretion." Commonwealth v. Hutchinson, 25 A.3d 277, 319 (Pa. 2011).

> With respect to recusals, our Supreme Court has explained:
>
> The standards for recusal are well established. It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

Commonwealth v. Abu-Jamal, 720 A.2d 79, 89 (Pa. 1998) (citations omitted).

Prior to trial, the trial court provided the following explanation of its decision not to recuse:

> [A]s you know[,] the [c]ourt's been District Attorney and Magisterial District Judge and now on the bench for three years and it's not uncommon to have situations like this.
>
> I can assure you that . . . I see many defendants over the course of a month or a year and I have no independent recollection of your case. I don't have any recollection of your son's case. Maybe if he were in here and I saw him and the facts were represented to me I might have a recollection[,] but your prior record and any family members would not cause me concern enough to recuse myself from this case. In fact I recognize the

name of one of the two victims, I believe I sentenced her at least once and I don't see that that would prejudice me against the Commonwealth because a Commonwealth witness was in front of me as well.

N.T., 3/8/16, at 7-8.

We conclude that the trial court did not abuse its discretion in declining to recuse from this case. Appellant has failed to produce evidence establishing bias, prejudice or unfairness that raised a substantial doubt as to the trial court's ability to preside impartially over this matter. See Abu-Jamal, 720 A.2d at 89. As this Court has explained, "[a] judge is not automatically disqualified from hearing a case merely because he has presided over prior cases involving the same defendant." Commonwealth v. Bryant, 476 A.2d 422, 424 n.1 (Pa. Super. 1984). Only "if circumstances exist showing a continuing or recurring bias against a particular defendant or a class of cases [should] the trial judge should be disqualified." Id. Beyond his claim that the trial judge should have recused because the judge previously presided over cases involving Appellant and his son, Appellant makes no allegation of bias against the trial judge. The trial court provided a logical and sound explanation of its decision not to recuse, and we see no basis upon which to disrupt that determination. Accordingly, Appellant's first issue is meritless.

Second, Appellant argues that the trial court erred in failing to strike Weakland's testimony when she stated that she "guessed" that the police recovered her cell phone from Appellant's person when they arrested him, and by failing to issue a cautionary instruction after sustaining Appellant's

objection to this testimony. Appellant's Brief at 9. Appellant asserts that Weakland's speculative statement was prejudicial because it could have caused the jury to believe that "Weakland knew for certain that [Appellant] had stolen her cell phone." Id.

Our standard of review of a trial court's evidentiary ruling is well settled:

The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

Commonwealth v. Hernandez, 39 A.3d 406, 411 (Pa. Super. 2012) (quotations and citation omitted).

The testimony at issue reads as follows:

[The Commonwealth]: So do you know where that phone came from, where they found the phone at? Do you know?

[Weakland]: I guess on his person.

[Defense Counsel]: I'm gonna object. Speculation.

The [c]ourt: Sustained.

[Weakland]: Yeah.

The [c]ourt: Sustained. You didn't see where it ---

[Defense Counsel]: And ask that it be stricken.

The [c]ourt: You didn't see where it came from?

[Weakland]: No I didn't see where the officers got it from.

N.T., 3/8/16, at 40-41.

We conclude that the trial court did not abuse its discretion in failing to strike Weakland's speculative testimony or offer a cautionary instruction. Instead, the trial court plainly, on its own, directly questioned Weakland to determine her knowledge regarding the police recovery of the phone. See id. Thus, there is no possibility that Weakland's speculative testimony prejudiced Appellant by causing the jury to believe he stole her cell phone. This conclusion is supported by the fact that although Appellant was charged with robbery, theft by unlawful taking, and receiving stolen property, he was not convicted of these crimes. Appellant's second issue does not entitle him to relief.

Finally, Appellant argues that the trial court erred by allowing the Commonwealth, during closing arguments, to identify one of the knives found on Appellant's person at the time of his arrest as the knife used during the incident with Weakland. Appellant contends that this prejudiced him "because it convinced the jury that the alleged victims were telling the truth when they claimed [Appellant] had assaulted them with a knife."

In reviewing a claim of improper prosecutorial comments, our standard of review "is whether the trial court abused its discretion." Commonwealth v. Hall, 701 A.2d 190, 198 (Pa. 1997). Additionally,

> [W]ith specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a

defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.

Commonwealth v. Jaynes, 135 A.3d 606, 615, appeal denied, 145 A.3d 724 (Pa. 2016) (quotations and citations omitted).

Appellant is incorrect that the trial court allowed the Commonwealth to identify one of the knives found on Appellant's person at the time of his arrest as the knife used during the incident. Rather, the trial court allowed the Commonwealth to argue the following:

> [Commonwealth]: Ladies and gentlemen, these two knives were found on his person and you can reasonably infer based on the circumstantial evidence that he had a knife in that bathroom and he has two knives on his person he went in and he was in that bathroom, puts a blade up against [Weakland] as she told you and she said too that phone's sitting there, sitting there on the corner and she feels something on her neck at which time she --- It's a knife.

N.T., 3/9/16, at 150-51.

Thus, in no way did the Commonwealth affirmatively state that any of the witnesses or victims identified one of the knives found on Appellant

- 9 -

following his arrest as the knives used on Weakland and Rockwell. To the contrary, the record reflects that the Commonwealth argued at closing that the jury could infer, based on the testimony of Weakland and Rockwell, that at least one of the two knives found on Appellant's person were used during the incident. The certified record supports this inference, as both Weakland and Rockwell testified that Appellant had threatened them with a knife on the evening of July 11, 2014, and when the police arrested Appellant later the same evening, they recovered two knives from his person. N.T., 3/8/16, at 17-21, 36, 61-62. Accordingly, the trial court did not abuse its discretion in allowing the Commonwealth to raise the inference relating to the knives found on Appellant after his arrest during closing arguments.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/30/2018

- 10 -